UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TIMOTHY VANHOOK, | ) | |
| Executor of the Estate of Wilda Vanhook, | ) | |
| | ) | Civil No. 14-121-GFVT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| SOMERSET HEALTH FACILITIES, LP, | ) | **ORDER** |
| d/b/a CUMBERLAND NURSING AND | ) | |
| REHABILITATION CENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

After his mother's death in a nursing home operated by Defendant, Plaintiff Timothy Vanhook, as executor of his mother's estate, brought this action claiming negligence per se, as well as several other causes of action. Vanhook alleges that Kentucky Revised Statute § 446.070, Kentucky's codification of the negligence per se doctrine, provides him a cause of action for violation of federal law, state criminal laws, and state laws regulating healthcare facilities and adult abuse. Defendant now moves to dismiss these negligence per se claims pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court agrees that some, but not all, of the claims pled in Vanhook's Complaint are legally insufficient or factually implausible as alleged. Accordingly, the Court GRANTS Defendant's motion to dismiss in part and DENIES it in part.

# I

On June 3, 2012, Wilda Vanhook was admitted to Cumberland Nursing and Rehabilitation Facility, a long-term care facility operated by Defendant Somerset Health Facilities, L.P. [Compl., R. 1-2 at ¶ 1.] Plaintiff Timothy Vanhook, Wilda Vanhook's son and the executor of her estate, alleges that his mother developed "multiple pressure sores" and suffered from dehydration and malnutrition due to Cumberland's neglect and failure to provide appropriate care. [*Id.*, R.1-2 at ¶ 20.] Vanhook claims that this "accelerated deterioration" of his mother's health led to her death on April 26, 2013. [*Id.*, R. 1-1.] He subsequently filed the present action alleging negligence, negligence per se under Kentucky Revised Statute (KRS) § 446.070, and corporate negligence.

At issue in this partial motion to dismiss are Vanhook's negligence per se claims. His Complaint alleges that Cumberland violated various statutory and regulatory duties of care that he contends are actionable as negligence per se under KRS § 446.070. [Compl., R. 1-2 at ¶ 26.] These claims can be divided into three broad categories. First, Vanhook appears to claim that Cumberland was negligent per se for violating "the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act." [Compl., R. 1-2 at ¶ 26(e)]. Second, Vanhook asserts a negligence per se claim for violation of three criminal statutes found in Kentucky's Penal Code, KRS § 508.090, KRS § 530.080, and KRS § 506.080. KRS § 508.090 makes certain acts of "criminal abuse" a felony, KRS § 530.080 creates a misdemeanor for "endangering the welfare of an incompetent person," and KRS § 506.080 is Kentucky's criminal facilitation statute. [Compl., R. 1-2 at ¶ 26(b)-(d)]. Third, Vanhook alleges that Cumberland was negligent per se for violating Chapters 209, 216,

and 216B of the Kentucky Revised Statutes.  [Compl., R. 1-2 at ¶ 26(a), (e)].  Chapter 209 codifies the Kentucky Adult Protection Act, Chapter 216 sets forth licensing requirements for long-term care facilities and enumerates the rights of residents in those facilities, and Chapter 216B sets forth the general licensing and quality of care requirements for all health care facilities operating in the Commonwealth.  Cumberland argues that Vanhook lacks a cause of action under KRS § 446.070 for each of these categories and that each of these negligence per se claims must be dismissed as a matter of law.

## II

### A

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing a Rule 12(b)(6) motion, the Court "accept[s] all the [plaintiff's] factual allegations as true and construe[s] the complaint in the light most favorable to the [p]laintiff[]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).  To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Additionally, as is now well known, the Supreme Court has clarified that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In amassing sufficient factual matter, plaintiffs need not provide "detailed factual allegations," but must advance "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "a formulaic recitation of the

elements of a cause of action." *Id.* (citing *Twombly*, 550 U.S. at 555). Though courts must accept all factual assertions as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 556). Thus, it is incumbent upon the Court to first sort through the plaintiff's complaint and separate the real factual allegations, which are accepted as true and contribute to the viability of the plaintiff's claim, from the legal conclusions that are only masquerading as facts and need not be accepted.

Once the Court has discarded the legal conclusions, the question becomes whether the actual remaining facts state a plausible claim for relief. Plaintiffs do not succeed in making a claim plausible by adorning to their complaints with facts creating a "sheer possibility that a defendant has acted unlawfully" or facts that are "merely consistent with a defendant's liability." *Id.* (citing *Twombly*, 550 U.S. at 557). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**B**

**1**

The threshold issue in contention here is whether the federal pleading standards articulated in Federal Rule of Civil Procedure 8 and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply to state law claims removed to federal court. Vanhook argues that this Court should look to Kentucky's pleading requirements in ruling upon Cumberland's 12(b)(6) motion, since his complaint was originally filed in a Kentucky state court. [Pl.'s Resp. to Def.'s Mot. Dismiss, R. 5 at 3.] Vanhook points out that Kentucky retains a notice pleading standard and, without citing any authority, contends that removal to federal court "cannot abrogate this standard." [*Id.*] This

assertion is incorrect.

It is well established that the Federal Rules of Civil Procedure apply to removed cases. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *see, e.g.*, *Granny Goose Foods v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."); *Stern v. Inter-Mountain Tel. Co.*, 226 F.2d 409 (6th Cir. 1955). The Sixth Circuit has not addressed the issue post-*Iqbal*, but other lower federal courts, including one within this Circuit, have consistently held that federal pleading requirements under Rule 8 and the *Twombly-Iqbal* standard apply to removed complaints, even where the state pleading standard is more lenient. *See Faulkner v. ADT Servs.*, 706 F.3d 1017 (9th Cir. 2013) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)) ("It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."); *Stuhlmacher v. Home Depot U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 50887, 2011 WL 1792853 (N.D. Ind. 2011) (applying federal pleading standards to a removed complaint and allowing repleading if the complaint falls short of the more stringent federal standard); *Maness v. Boston Scientific*, 751 F. Supp. 2d 962 (E.D. Tenn. 2010) (rejecting the plaintiff's argument for application of a state pleading standard as "without merit" and holding that "all claims, once removed to federal court, are subject to federal pleading requirements); *Wendell v. Johnson & Johnson*, No. C 09-04124, 2010 U.S. Dist. LEXIS 4188, at *7 (N.D. Cal. Jan. 20, 2010) ("[A] Rule 12(b)(6) motion considers the substantive sufficiency of the pleadings as if the action had never been in state court."); *Smith v. Local Union No. 110*, 681 F. Supp. 2d 995, 1006 (D.

Minn.2010) (citing *Willy v. Coastal Corp.*, 503 U.S. 131 (1992)); *Sibel Prods. v. Gaming Partners Int'l Corp.*, No. 09-cv-87, 2009 U.S. Dist. LEXIS 119703, at *6-7 (S.D. Ill. Dec. 23, 2009); *Lin v. Chase Card Servs.*, No. 09-5938, 2010 U.S. Dist. LEXIS 29120, at *7 n.2 (D.N.J. Mar. 26, 2010); *Davenport v. Sugar Mountain Retreat, Inc.*, 2009 WL 3415240 (N.D. Okla. Oct. 16, 2009). *But see Edwea, Inc. v. Allstate Ins. Co.*, CIV.A. H-10-2970, 2010 WL 5099607 (S.D. Tex. Dec. 8, 2010) (applying state pleading requirements in order to predict the viability of a plaintiff's complaint in the context of fraudulent joinder).

A number of sources lend support to this conclusion. First, the U.S. Supreme Court's broad language in *Iqbal* contemplates applying Rule 8 and its corresponding case law to removed actions. Rather than limit *Twombly*'s interpretation of Rule 8 to the narrow antitrust context, the U.S. Supreme Court announced that the plausibility pleading requirements apply broadly "in *all* civil actions and proceedings in the United States district courts." *Iqbal* at 1953 (emphasis added); *see also Maness*, 751 F. Supp. 2d at 966.

Further, an analogous line of Sixth Circuit cases applies the *Iqbal* pleading standard to state law claims in diversity cases. *See, e.g.*, *Foust v. Stryker Corp.*, No. 2:10-cv-00005, 2010 U.S. Dist. LEXIS 69771, 2010 WL 2572179, at *2 (S.D. Ohio Jun. 22, 2010) (applying *Twombly* pleading standard on a motion to dismiss state law claims); *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010) (unreported) (applying *Twombly* pleading standard in a diversity case to assess the factual plausibility of the plaintiff's state law claims). Neither the source of the federal district court's subject matter jurisdiction nor the origin of the substantive laws at issue affect the applicability of the federal rules in the diversity context. It stands to reason that the same must be true in the context of removed actions. *E.g.*, *Maness*, 751 F. Supp. 2d at 966.

Perhaps most importantly, the Federal Rules of Civil Procedure address this situation. Rule 81(c) specifically provides that "[t]hese rules apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). This "expansive language contains no express exceptions," *Willy v. Coastal Corp.*, 503 U.S. 131, 134 (1992), indicating an intent to apply Rule 8 pleading standards to all district court proceedings, including those that originated with state courts. *See Maness*, 751 F. Supp. 2d at 967. Further, Rule 81(c)(2) explains that "[a]fter removal, repleading is unnecessary unless the court orders it." The implication from this subsection is that a complaint—even if filed in state court and based on state law claims—is automatically subject to federal pleading requirements after removal. *See Maness*, 751 F. Supp. 2d at 967.

Vanhook's complaint was initially filed in state court, where, as he has correctly noted, notice pleading standards apply. *E.g.*, *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005). However, this action has since been removed to federal court. As such, the Federal Rules of Civil Procedure—including Rule 8(a)(2) and the plausibility pleading standard articulated in *Iqbal* and *Twombly*—now apply. Accordingly, Vanhook's complaint will be assessed under federal, not state, pleading standards.

## 2

Cumberland argues that Vanhook's negligence per se claims based on violation of federal Medicaid and Medicare statutes, criminal statutes, and Kentucky nursing home statutes must be dismissed as a matter of law. The doctrine of negligence per se allows a court to determine a standard of conduct by reference to a statute. In essence, "[n]egligence per se is merely a negligence claim with a statutory standard of care substituted for the common law standard of

care." *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2009).

Kentucky has codified the common law negligence per se doctrine and created an avenue by which an individual may seek relief even where a statute does not specifically provide a private remedy. KRS § 446.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." This statute creates a private right of action under which a damaged party may sue for a violation of a statutory standard of care, provided that three prerequisites are met: first, the statute in question must be penal in nature or provide "no inclusive civil remedy," *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005); second, "the party [must be] within the class of persons the statute is intended to protect," *Young*, 289 S.W.3d at 589 (citing *Hargis*, 168 S.W.3d at 40); and third, the plaintiff's injury must be of the type that the statute was designed to prevent. *Griffith v. Kuester*, 780 F. Supp. 2d 536, 547 (E.D. Ky. 2011) (quoting *Carman v. Dunaway Timber Co.*, 949 S.W.2d 569, 570 (Ky. 1997)). The Court considers each of Vanhook's negligence per se claims in turn.

**a**

Cumberland first argues that KRS § 446.070 does not create a cause of action for violation of the federal statutes and regulations cited in the Complaint. The Court agrees and finds that this claim must be dismissed.

Kentucky courts have held that KRS § 446.070 "does not extend to federal statutes and regulations . . . ." *Young*, 289 S.W.3d at 589 (citing *T & M Jewelry v. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006); *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. Ct. App. 1997)). Although the statute terms appear to apply broadly ("a person injured by the violation of *any statute* may

recover . . ."), the Kentucky Supreme Court has made clear that "the 'any statute' language in KRS § 446.070 is limited to Kentucky statutes . . ."—not federal ones.  *Young*, 289 S.W.3d at 589; *see also St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011).  The General Assembly, the Court has explained, did not intend for the negligence per se statute to "embrace the whole of federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations."  *T & M Jewelry*, 189 S.W.3d at 530.

Vanhook appears to have based this cause of action on the violation of federal statutes under the Social Security Act.[1]  [Compl. at Para 26(e), R. 1-2].  These federal statutes are beyond the scope of Kentucky's negligence per se statute.  Contrary to Vanhook's contentions, for which he cites no authority, the fact that the federal and state regulatory schemes overlap in this context does not change this result under Kentucky law.  *See, e.g.*, *McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799 (W.D. Ky. 2013) (relying on *Young* to reject a negligence per se claim based on the federal MSHA statute where plaintiff's claim was premised on both federal and state MSHA regulations); *Galindo v. Univ. Med. Ctr., Inc.*, 2013 U.S. Dist. LEXIS 111794, at *4 n.3, 2013 WL 4045324 (W.D. Ky. Aug. 8, 2013) (noting in dicta that a § 446.070 claim based

---

[1] Cumberland removed this action solely on the basis of diversity, [R. 1], and neither party has argued that this Court has federal question jurisdiction through this claim.  The Complaint reads:

> Pursuant to KRS § 446.070, Plaintiff, Wilda Vanhook, also alleges Defendant, violated statutory and regulatory duties of care . . . [including] [v]iolation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services pursuant to provisions of KRS Chapter 216 and 216B and the regulations promulgated thereunder *as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act*.

[Compl., R.1-2 at ¶ 26(e) (emphasis added).]  Assessing this exact language, one court has already determined that this fleeting reference is insufficient to confer federal question jurisdiction.  *See Galindo v. Univ. Med. Ctr., Inc.*, 2013 U.S. Dist. LEXIS 111794, 2013 WL 4045324 (W.D. Ky. Aug. 8, 2013).  Unlike *Galindo*, where removal was based solely upon federal question jurisdiction, there is complete diversity of the parties in this action, so this analysis is focused on the viability of this claim under Kentucky law.

upon violation of federal Medicaid and Medicare statutes would have to be dismissed). *Accord Lounds v. State, ex rel. Dep't of Veterans Affairs*, 255 P.3d 460 (Okla. Civ. App. 2011) (holding that federal Medicare and Medicaid regulations could not establish the standard of care in a negligence action, but noting that plaintiff may pursue a statutory negligence claim under the Oklahoma Nursing Home Act); *Satterwhite v. Reilly*, 817 So. 2d 407 (La. Ct. App. 2002), *cert. denied*, 825 So. 2d 1193 (La. 2002) (refusing to allow federal Medicare and Medicaid standards as implied private right of action or as basis for negligence per se); *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633 (S.D. Miss. 2002) ("[Federal Medicare and Medicaid] regulations exist to provide guidelines and procedures, not to create a legal standard of care for purposes of creating civil litigation."). *But see McLain v. Mariner Health Care, Inc.*, 631 S.E.2d 435 (Ga. App. 2006) (holding that trial court erred in dismissing plaintiff's negligence per se claim for violation of federal Medicare and Medicaid regulations). Accordingly, to the extent that Vanhook alleges a negligence per se claim based on violation of federal law, that claim fails as a matter of law and must be dismissed.

**b**

Cumberland next argues that Vanhook's negligence per se claims based on violations of criminal statutes must be dismissed. Vanhook bases his § 446.070-negligence-per-se claims on three criminal statutes: KRS § 508.090, which makes certain acts of "criminal abuse" a felony, KRS § 530.080, which makes it a misdemeanor to endanger the welfare of an incompetent person, and KRS § 506.080, which provides criminal liability for criminal facilitation. [Compl., R. 1-2 at ¶ 26(b)-(d)].

Cumberland initially points to cases from Kentucky and elsewhere for the proposition that courts disfavor finding an implied private right of action in criminal statutes. [Def.'s Mot. Dismiss, R. 3 at 23-24]. *E.g.*, *Ashland Hosp. v. Int'l Brotherhood of Elec. Workers*, 807 F. Supp. 633 (E.D. Ky. 2011) (declining to find a private right of action in a federal statute); *Bridges v. Wooten*, 700 S.E.2d, 679 (Ga. App. 2010); *Anthony v. Am. Gen. Fin. Servs., Inc.*, 697 S.E.2d 166 (Ga. 2010). First, Georgia case law is not controlling in this inquiry, particularly since Kentucky case law provides some guidance on the matter. Further, these cases only address whether an implied private right of action can be inferred from within the criminal statute itself. That is not the case here. The negligence per se doctrine, codified through section 446.070, does not depend on a grant of a private right of action, express or implied, from the statute providing the standard of care. *E.g.*, *Compton v. City of Harrodsburg*, 2013 U.S. Dist. LEXIS 68690 (E.D. Ky. May 10, 2013) (distinguishing an argument that a KRS § 620.030 provided a cause of action from an argument that KRS § 446.070 provided a cause of action for a violation of KRS § 620.030). Instead, as has been previously noted, a claim under § 446.070 simply substitutes the common law standard of care in a negligence action for a statutory one. *Young*, 289 S.W.3d at 588-89. The posture and distinct focus of the cases cited by Defendant makes them distinguishable.

Kentucky courts have long stated that § 446.070 provides a cause of action for "violation of any statute that is *penal in nature*. . . ." *Hargis*, 168 S.W.3d at 40. However, no Kentucky court has considered whether KRS § 446.070 provides a right of action for the violation of criminal statutes such as the ones relied upon by Plaintiff. "[W]hen evaluating an undecided question of Kentucky law, a federal court sitting in diversity must make the 'the best prediction,

even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with [the] question.'" *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citation omitted). In making such a pronouncement about state law, federal courts must "proceed with caution." *Id.* (citation omitted). Though this precise question is an issue of first impression, some Kentucky case law provides guidance.

A handful of Kentucky cases appear to presume that § 446.070 provides a right of action for violation of criminal statutes. *Readnour v. Gibson*, 2014 WL 4656504 (affirming summary judgment for defendants on plaintiff's § 446.070 claims for violation of criminal assault, stalking, and abuse statutes, among others, since plaintiff failed to put on any evidence that he was physically injured as required by those statutes); *Ford v. Fallon* (affirming summary judgment on a § 446.070 claim for violation of KRS § 434.155, which makes it a felony to file a document or lien known to be forged, groundless, or false). More recently, federal courts applying Kentucky law have found that claims for violation of criminal statutes pursuant to KRS § 446.070 could survive a motion to dismiss. Most notably, in *Pace v. Medco Franklin RE, LLC*, No. 1:12-CV-00132, 2013 WL 3233469 (W.D. Ky. June 25, 2013), the Western District of Kentucky held that a § 446.070 claim for violation of KRS § 530.080—one of the statutes relied upon by Vanhook here—survived a motion to dismiss since the plaintiff's decedent, also a nursing home resident, was within the class of persons that the penal statute aimed to protect. *See also Compton v. City of Harrodsburg*, 2013 U.S. Dist. LEXIS 68690 (E.D. Ky. May 10, 2013) (allowing § 446.070 for violation of KRS § 620.030, Kentucky's child abuse reporting statute, which makes it a misdemeanor to intentionally fail to report child abuse).

Although Kentucky courts have not yet addressed this precise issue, permitting a §
446.070 claim for violation of these statutes would comport with the prerequisites that Kentucky
courts have articulated for a § 446.070 action.  First, it is clear that the statutes in question are
penal in nature.  *See Hargis*, 168 S.W.3d at 40.  Each provides criminal liability for its violation,
and no civil remedy is provided in any of these statutes.

The next question is whether Ms. Vanhook was within the class of persons that these
criminal statutes were designed to protect.  The plain language and legislative intent of a statute
guide this analysis.  *See, e.g.*, *McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799 (W.D.
Ky. 2013); *Christian Cnty. Clerk ex rel. Kem v. Mortgage Elec. Registration Sys., Inc.*, 515 F.
App'x 451, 456 (6th Cir. 2013) (unreported).  Two of the statutes aim to protect a certain kind of
victim.  First, KRS § 530.080 criminalizes endangering the welfare of "an incompetent person,"
which the statute goes on to define as a "person who is unable to care for himself because of
mental illness or intellectual disability."  KRS § 530.100.  Second, KRS § 508.100 makes it a
felony to inflict "criminal abuse" on "a person who is physically helpless or mentally helpless,"
which is defined as "a person who lacks substantial capacity to defend himself or solicit
protection from law enforcement agencies."  KRS § 508.090(2).  Finally, KRS § 506.080,
Kentucky's criminal facilitation statute, lists no specific victim, but applies broadly to protect the
public from criminal activities.

The Complaint alleges that Ms. Vanhook was a nursing home resident who was "looking
to Defendant, Cumberland, for treatment of her total needs . . . and assistance with her activities
of daily living."  [Compl., R.1-2 at ¶ 16.]  The Complaint further alleges that Ms. Vanhook
sustained injuries as a result of neglect.  [Compl., R.1-2 at ¶ 19, 20, 24.]

Vanhook's claim for violation of KRS § 508.090 is quite bare, but it provides enough factual basis for the Court to infer that Ms. Vanhook could have been "physically helpless" within the meaning of the statute. The allegation that Ms. Vanhook "was looking to Defendant . . . for . . . her total needs" supports a reasonable inference that she was dependent on Cumberland and may have therefore lacked the capacity to defend herself or seek help from law enforcement. KRS § 508.090(2). Assuming the factual allegations in the Complaint to be true, Ms. Vanhook is within the class of persons that the criminal abuse statute, KRS § 508.090 et seq., aims to protect.

However, Vanhook has alleged no facts to make it plausible that Cumberland violated KRS § 530.100. There is no indication in the Complaint that Ms. Vanhook was an "incompetent person" within the meaning of the statute, and nowhere does Plaintiff allege that she suffered from a "mental illness or intellectual disability" as the statute prescribes. To the extent Vanhook mentions his mother's mental capacity, his allegation is a legal conclusion which this Court is not required to accept under *Iqbal*. The Complaint simply tracks the language of the statute and alleges that Ms. Vanhook "was physically helpless or mentally helpless" and was "an incompetent person" who suffered "injury to [her] physical and/or mental welfare." [Compl., R. 1-2 at ¶ 26(e).] Although the *Pace* Court found that the plaintiff there had stated a claim for violation of this statute, the plaintiff in that case had alleged that the decedent was "at all relevant times . . . of unsound mind, and she remained incompetent until her death." *Pace*, 2013 WL 3233469 at *3. No such specific factual allegation is present here. As the Complaint now stands, Vanhook has not stated a claim for violation of KRS § 530.100 under the negligence per se statute. This claim must therefore be dismissed.

Finally, Ms. Vanhook appears to be within the rather broad class of persons that the criminal facilitation statute, KRS § 506.080, is ultimately designed to protect: the public. However, Vanhook has not stated a negligence per se claim that arises from the type of harm covered by the criminal facilitation statute. The *type* of harm that the criminal facilitation statute aims to prevent is distinct from that in the two above statutes, 508.090 and 530.100. Drafted with specific victims in mind, those statutes are meant to deter harmful criminal conduct *specifically directed* at physically helpless and incompetent persons, respectively. A criminal facilitation statute, on the other hand, is meant to generally promote respect for the law and discourage collaborative criminal activity. *See, e.g.*, *Skinner v. Commonwealth*, 864 S.W.2d. 290 (Ky. 1993) (explaining that the criminal facilitation statute applies in situations where a person knows that another intends to commit a crime and provides the means or opportunity for its commission).

Reading the Complaint generously, however, Vanhook has not pled that Ms. Vanhook's injury stemmed from this type of harm. The Complaint's negligence-per-se claim for violation of KRS § 506.080 itself is bare and conclusory.[2] Under *Iqbal* and Federal Rule of Civil Procedure 8, simply citing the statute and tracking its language is insufficient to provide notice to the defendant or state a claim that is plausible on its face. Even when looking to other portions of the Complaint, including the "corporate negligence" claim [Compl., R. 1-2 at ¶¶ 29-37],

---

[2] The Complaint reads:

> The negligence *per se* of Defendant included . . . Violations of KRS 506.080 criminal facilitation of criminal acts by acting with knowledge that another person or entity was committing one or more of the foregoing criminal acts or intending to commit one or more of the foregoing criminal acts and engaged in conduct which knowingly provided another person or entity the means or opportunity for the commission of such criminal acts and which in fact aided another person or entity to commit the criminal acts.

nowhere does Vanhook set forth any allegation to make it plausible that Cumberland knew or was willfully blind to its employees' criminally abusive behavior, or that it knowingly provided the opportunity or means for its employees to commit such a crime. Without any factual allegations to give rise to a reasonable inference that Cumberland violated the criminal facilitation statute, this Court must dismiss Vanhook's KRS § 446.070 claim on these grounds.

In summary, while Vanhook has stated a claim for violation of the criminal abuse statute, KRS § 508.090, he fails to state a claim for violation of Kentucky's criminal facilitation statute, KRS § 506.080. Likewise, as it stands, his Complaint fails to state a claim for violation of the endangerment statute, KRS § 530.080, since he has pled no facts to show that Ms. Vanhook was an "incompetent person" meant to be protected by the statute.

### c

Finally, Cumberland argues that Vanhook cannot bring a negligence per se claim for violations of KRS Chapters 216, 216B, and 209 and their corresponding regulations. In turn, the Court assesses each set of statutes against the required elements of a negligence per se claim under KRS § 446.070.

### i

Vanhook cites no specific standards or provisions, but broadly pleads a § 446.070 claim for "[v]iolation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services pursuant to provisions of KRS Chapter 216 and 216B and the regulations promulgated thereunder." [Compl., R. 1-2 at ¶ 26(e).] Kentucky Revised Statutes Chapter 216 imposes specific licensure and public health standards on Kentucky long-term care facilities, KRS § 216.510-.600, while

---

Compl., R. 1-2 at ¶ 26(d).

Chapter 216B prescribes similar requirements that are applicable to all health facilities and health services in the Commonwealth, KRS § 216B.010.  No Kentucky court has considered whether KRS § 446.070 provides a right of action under either Chapter.  As such, the Court again proceeds with caution in "determin[ing] the issue as would the highest court of the state." *Combs*, 354 F.3d 568, 577 (6th Cir. 2004) (quoting *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997)).  The Court assesses each of these related chapters in turn.

Central to Chapter 216's long-term care subsection is KRS § 216.515, which enumerates the rights of residents in long-term care facilities and defines the duties of such facilities.  This statute also specifically provides that "any resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility responsible for the violation."  KRS § 216.515(26); *see, e.g.*, *Wilcoxson v. Golden Gate Nat. Senior Care, LLC*, 1:13-CV-00144, 2013 WL 6097884 (W.D. Ky. Nov. 20, 2013) (citing *Stivers v. Ellington*, 140 S.W.3d 599 (Ky. App. Ct.  2004); *Kindred Nursing Ctrs. L.P. v. Overstreet*, 2013 WL 4033906 (Ky. App. Ct. Aug. 9, 2013), *appeal docketed*, 2013 WL 4033906 (Aug. 13, 2014)) (finding that "KRS § 216.515(26) does not create a new statutory theory of liability . . . [but] merely sets forth the statutory standard of care . . ." that is actionable through negligence and negligence per se claims).  An injured resident who prevails may recover actual and punitive damages.  *Id.* Cumberland has not moved to dismiss Vanhook's claims arising from this resident's rights statute.  [*See* Def.'s Mot. Dismiss, R. 3-2 (seeking to dismiss only those "claims based on statutory and regulatory violations not specifically enumerated in KRS § 216.515 . . . .")].  This provision, however, is important to the analysis of Vanhook's claim for negligence per se for the violation of all other provisions of Chapter 216.

Even if Ms. Vanhook is among the class of persons that Chapter 216 was designed to protect, the scheme of Chapter 216 cannot satisfy the other prerequisite of a negligence per se claim, since the Chapter provides a civil remedy. "The Kentucky Supreme Court has carefully limited the applicability of section 446.070 to situations where the statute that was allegedly violated provides no remedy for the aggrieved party." *Thompson v. Breeding*, 351 F.3d 732, 737 (6th Cir. 2003) (negligence per se claim not actionable for violation of auctioneering standards, where statute provided mechanism for making consumer complaints and assessing fines against licensed auctioneers). *Compare Travelers Indem. Co. v. Reker*, 100 S.W.3d 756 (Ky. 2003) (section 446.070 not applicable where Workers' Compensation act provides an exclusive remedy for violations of workers' compensation statutes), *and Grzyb* (section 446.070 not applicable for wrongful discharge claim, where KRS Chapter 334 provides remedy of filing complaint with Kentucky Commission on Human Rights), *with Reeder* (section 446.070 provides a cause of action since the Kentucky Unfair Claims Settlement Practices Act contains no remedy for an aggrieved party); *Ezell* (section 446.070 provides a right of action against County Engineer since the safety statute provided no remedy to the particular aggrieved party, despite the fact that the statute allowed the Cabinet to penalize the County Engineer with fines).

The specific enumeration of resident's rights and the provision of a civil remedy in KRS § 216.515 preclude a negligence per se action to enforce the general provisions of Chapter 216. *Pace*, 2013 WL 3233469 at *6. As the *Pace* Court explained, it is a basic tenet of statutory construction that "when two statutes are in conflict, one which deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails." *Reker*, 100 S.W.3d at 763 (rejecting a § 446.070 claim for violation of the Kentucky Worker's

Compensation statute, since that statute expressly prescribes that it is the exclusive remedy for any violations). The resident's rights provision, the *Pace* Court reasoned, "evidences the legislature's intent and ability to create private rights of action for some of the provisions found in KRS Chapter 216 to the exclusion of others." *Pace*, 2013 WL 3233469 at *6. Because the resident's rights statute specifies the civil remedy available under Chapter 216, and because the General Assembly chose to include certain rights while excluding others under Chapter 216, the general provisions of Chapter 216 cannot be actionable through KRS § 446.070. *Id.* Plaintiff does not point to any provision within this chapter contradicting this conclusion, nor does he cite any authority to the contrary. As such, Vanhook's negligence per se claim based on violation of Chapter 216—with the exception of those claims brought under KRS § 216.515(26)—must be dismissed.

Likewise, Vanhook's negligence per se claim under Chapter 216B ultimately fails. The stated purpose of Kentucky Revised Statutes Chapter 216B is to empower the Cabinet for Health and Family Services to oversee the licensure and quality of care standards in health care facilities. KRS § 216B.010. The chapter chiefly provides for the certificate-of-need process. *E.g.*, KRS §§ 216B.020-.131.

Ms. Vanhook is, broadly speaking, among the class of persons that Chapter 216B was designed to protect. In KRS § 216B.010, the General Assembly explained the statute's purpose this way: "[T]he licensure of health facilities and health services is a means to insure that the citizens of this Commonwealth will have safe, adequate, and efficient medical care . . . ." The statute's end goal in implementing its licensure provisions, then, is to protect users of Kentucky health care facilities. Vanhook's Complaint alleges that Ms. Vanhook was a resident of a long-

term care facility. [Compl. R.1-2 at ¶ 1]. Construing the Chapter's goals broadly, then, she was within the class of persons that these licensure standards were designed to protect.

The next question is whether the statute provides any civil remedy. The chapter provides that the Cabinet may assess fines and other civil penalties, including revocation of a certificate of need. *E.g.*, KRS § 216B.990; KRS § 216B.086. However, none of these civil penalties provide a remedy "*to the aggrieved party*." *Ezell v. Christian Cnty., Ky.*, 245 F.3d 853, 856 (6th Cir. 2001) (emphasis in original). In other words, the fact that the Chapter provides civil penalties that may be wielded by the Cabinet does not preclude a right of action for the aggrieved party here, a nursing home resident. *See Hackney v. Fordson Coal Co.*, 19 S.W.2d 989, 990 (Ky. 1929) ("[Section 446.070 is intended to] remove any doubt that might arise as to the right of a person for whose protection a statute was passed to recover for a violation of that statute, where the statute was penal in its nature, or where by its terms the statute did not prescribe a remedy for its enforcement or violation.").

As his Complaint stands, however, Vanhook has not stated a claim for violation of Chapter 216B, because he has not shown that the harm that Ms. Vanhook suffered was an event that the statute was designed to prevent. *See Griffith*, 780 F. Supp. 2d at 546-47. While the Chapter's end goal may be to protect the Commonwealth's citizens and users of health care facilities, *see* KRS § 216B.010 (first sentence), it principally aims to regulate the proliferation of health care facilities and their services so as to "improve the quality and increase access to health-care facilities, services, and providers, and to create a cost-efficient health-care delivery system for the citizens of the Commonwealth." KRS § 216B.010. In essence, the statute requires certificates of need in order to prevent health care facilities from amassing new services

and equipment—the cost of which would ultimately be borne by patients, precluding access to health care for some Kentucky citizens. *See id.* The type of harm the statute aims to prevent, then, is economic in nature. Vanhook has not alleged any injury regarding her access to health care or economic harm. Rather, Ms. Vanhook suffered a physical harm: the alleged "accelerated deterioration" of her health while in the care of Cumberland. [Compl., R. 1-2 at ¶ 20.] Thus, he cannot state a negligence per se claim for violation of KRS Chapter 216B, and this claim must be dismissed.

## ii

Vanhook also broadly claims a right of action under § 446.070 for violation of "Chapter 209.005 et seq. and the regulations promulgated thereunder . . . ." [Compl., R. 1-2 at ¶ 26(a).] Chapter 209 of the Kentucky Revised Statutes codifies the Kentucky Adult Protection Act (KAPA), which primarily aims to protect vulnerable adults from abuse, neglect, or exploitation. See KRS § 209.010(1)(a). The Chapter's provisions can be grouped into five categories. First, and most relevant here, is the mandatory reporting requirement and its administrative enforcement provisions. KRS § 209.010-.200. Under the KAPA, "any person, including but not limited to [a] physician, . . . or caretaker, having reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation" is required to report the abuse to state authorities. KRS § 209.030(2). Knowing or wanton failure to report such abuse is a misdemeanor. KRS § 209.990(1). The Act also sets forth the procedures that the Cabinet for Health and Human Services and state prosecutors must follow in investigating and processing a report of abuse. KRS §§ 209.032-.200.

The KAPA also provides criminal liability for the knowing, wanton, or reckless abuse, neglect, or exploitation of an adult, for both physical and financial harm. KRS § 209.990(2)-(7). Other components of the KAPA address an adult retail goods discount program, KRS § 209.400-.420, and a senior games program, KRS § 209.500. Finally, the Act requires long-term care facilities to ensure that their residents and employees receive certain immunizations. KRS § 209.550-554.

Kentucky courts have not spoken as to whether KRS § 446.070 provides a right of action for violation of Chapter 209. As such, this Court must again make an "*Erie* guess" to decide "what the Kentucky Supreme Court would do if it were confronted with this question." *Combs*, 354 F.3d 568, 577 (6th Cir. 2004) (quoting *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000)).

As an initial matter, however, several components of the KAPA can be disposed of. Vanhook has pled no facts to make it plausible that Cumberland violated the discount program provisions, the senior games program provision, or the immunization provisions. Accordingly, the Court focuses its analysis on the mandatory reporting requirement and its administrative provisions, as well as the KAPA's criminal statute.

First, Ms. Vanhook is within the class of persons that the KAPA was designed to protect. Again, the terms and legislative intent of a statute guide our analysis here. *E.g.*, *McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799 (W.D. Ky. 2013); *Christian Cnty. Clerk ex rel. Kem v. Mortgage Elec. Registration Sys., Inc.*, 515 F. App'x 451, 456 (6th Cir. 2013) (unreported). For purposes of Chapter 209, "adult" includes a person who, "because of mental or physical dysfunctioning, is unable to . . . protect himself or herself from neglect, exploitation, or

a hazardous or abusive situation without assistance from others . . . ."  KRS § 209.020(4).

Again, the Complaint alleges that Ms. Vanhook was a nursing home resident who was "looking

to Defendant, Cumberland, for treatment of her total needs . . . and assistance with her activities

of daily living."  [Compl., R.1-2 at ¶ 16.]  The Complaint further alleges that Ms. Vanhook

sustained injuries as a result of neglect.  [Compl., R.1-2 at ¶ 19, 20, 24.]  Assuming the factual

allegations in the Complaint to be true, Ms. Vanhook is within the class of persons protected by

the KAPA.

The second question is whether the Act is silent as to any civil remedy or is penal in

nature.  The content of the procedural administrative provisions in the remainder of the KAPA,

however, precludes the use of § 446.070.  These provisions prescribe the procedures and

obligations of governmental entities in investigating and prosecuting reports of adult abuse.

These provisions do not impose a duty or standard of care upon long-term care facilities or

nursing homes like Cumberland.  *Pace*, 2013 WL 3233469 at *5; *see also GATX Corp. v.

Addington*, 879 F. Supp 2d. 633 (E.D. Ky. 2012) (dismissing § 446.070 claim under fraudulent

conveyance statute brought against non-transferees, since the statute did not impose any duty on

those persons).  To the extent that Vanhook has based a § 446.070 claim on violations of these

administrative provisions, it must be dismissed.

The reporting requirement invites a different conclusion on this point, however.  The

KAPA also provides criminal liability for violation of the mandatory reporting requirement in

KRS § 209.030(2). KRS § 209.990(1).  Under the Act, "caretaker" includes "an individual or

*institution* who has been entrusted with or who has the responsibility for the care of the adult as a

result of family relationship, or who has assumed the responsibility for the care of the adult

person voluntarily or by contract, employment, legal duty, or agreement." KRS § 209.020(6) (emphasis added). The duty to report would thus apply to long-term care facilities like Cumberland, as well as their employees. *See* Jennifer Leibson, 23 Ky. Practice Elder Law § 15:1 (2014). Because Ms. Vanhook is within the class of persons protected by the KAPA, and because the statute is penal in nature but provides no direct remedy to an aggrieved party like Ms. Vanhook, this Court must find that § 446.070 provides a cause of action for violation of this mandatory reporting provision.

Whether violation of a reporting statute can be a basis for civil liability has been a controversial question in many jurisdictions. *E.g.*, *Perry v. S.N. & S.N.*, 973 S.W.2d 301 (Tex. 1998) (declining to allow a negligence per se claim for violation of state child abuse reporting statute); *see also Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004) (Posner, J.) (declining to find that Illinois' child abuse reporting act created a tort duty on the part of hospital personnel who observed signs of suspected abuse of child by his babysitter). However, the conclusion reached here is warranted under current Kentucky law. The Kentucky Supreme Court recently suggested, and a federal court recently concluded, that § 446.070 provides a right of action for violation of the Kentucky child abuse reporting statute, KRS § 620.030. *Turner v. Nelson*, 342 S.W.3d 866 (Ky. 2011); *Compton*, 2013 U.S. Dist. LEXIS 68690. The child abuse statute closely resembles the adult abuse statute at issue here. Both impose a duty on a similar set of persons. *See* KRS § 620.030(1)-(2) (imposing a duty to report on "any person," including "a physician, osteopathic physician, nurse, teacher" and various other school, health, and public officials "who knows or has reasonable cause to believe that a child is . . . abused"); KRS § 209.030 (imposing a duty to report on "[a]ny person, including but not limited to physician, law enforcement officer,

nurse, social worker, cabinet personnel, coroner, medical examiner, alternate care facility employee, or caretaker, having reasonable cause to suspect that an adult has suffered abuse, neglect, or exploitation"). Both include a similar scheme for agency investigation and prosecution of each respective type of abuse. *See* KRS §§ 620.023-.040, .060-.180; KRS §§ 209.010-.200.

Further, as emphasized above, the broad, plain language of § 446.070 contemplates a right of action for a vast array of Kentucky statutory violations. *See Hackney v. Fordson Coal Co.*, 19 S.W.2d 989, 990 (Ky. 1929) ("[Section 446.070 is intended to] remove any doubt that might arise as to the right of a person for whose protection a statute was passed to recover for a violation of that statute, where the statute was penal in its nature, or where by its terms the statute did not prescribe a remedy for its enforcement or violation.").

Vanhook has not, however, stated a claim for violation of 209.020(6) here. To state a plausible claim, he must set forth sufficient facts that would enable the Court to reasonably infer that Cumberland violated the requirements of the mandatory reporting provision. Vanhook has not alleged sufficient facts to state a claim for violation of the reporting requirement in KRS § 209.030. Indeed, nowhere does he suggest that Cumberland or its employees *failed to report* any alleged abuse or neglect suffered by Ms. Vanhook. The Complaint fails to "nudge [Vanhook's] claim across the line from conceivable to plausible" as to this statute. *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570). As it currently stands, Vanhook's claim for negligence per se for violation of the mandatory reporting requirement under Chapter 209 is not plausible on its face, and it must be dismissed.

Lastly, the KAPA's criminal provisions, KRS § 209.990(2)-(7), are penal in nature. The statute does state that victims of abuse have standing to make a criminal complaint, but—much like the provisions of Chapter 216B—the statute provides no direct *civil* remedy "*to the aggrieved party.*" *Ezell v. Christian Cnty., Ky.*, 245 F.3d 853, 856 (6th Cir. 2001) (emphasis in original). Since Ms. Vanhook is within the class of persons protected by the penalty provision, and since the statute is silent as to any other civil remedy, § 446.070 provides a cause of action for violation of the criminal provisions in KRS § 209.990(2)-(7).

Vanhook has stated a claim under some of the sub-sections of this criminal statute. He has pled no facts relating to "exploitation" as it is defined in the KAPA. KRS § 209.020(9) ("'Exploitation' means obtaining or using another person's resources, including but not limited to funds, assets, or property, by deception, intimidation, or similar means, with the intent to deprive the person of those resources"). However, though his allegation is bare and conclusory, Vanhook has set forth sufficient facts to make it possible that Ms. Vanhook was the victim of knowing or reckless abuse or neglect. As noted above, the allegation for violation of Chapter 209 is quite bare. [Compl., R. 1-2 at ¶ 26(a) ("[v]iolation(s) of KRS § 209.005 et seq. and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Decedent, Wilda Vanhook . . .")]. The negligence per se section of the Complaint alleges that "Defendant, Cumberland, acted with oppression, fraud, malice or was grossly negligent by acting with wanton or reckless disregard for the health and safety of Decedent, Wilda Vanhook." [Compl., R. 1-2 at ¶ 15.] This Court is not required to consider these legal conclusions. Elsewhere in the Complaint, however, Defendant sets forth more specific facts to make it plausible that Ms. Vanhook was the victim of abuse or neglect. [*See, e.g.*, Compl., R. 1-2 at ¶ 24(e) ("failure to

ensure that Decedent, Wilda Vanhook, received adequate and proper nutrition, fluids, supervision, therapeutic [sic], and skin care"); ¶ 24(h) ("failure to take any or all necessary and reasonable custodial measure to prevent the onset and progression of pressure ulcers or other skin breakdown to Decedent, Wilda Vanhook, during her residency"); ¶ 24(l) ("failure to provide adequate hygiene and sanitary care to prevent infection")]. As such, the Court is satisfied that Plaintiff has stated a § 446.070-negligence-per-se claim for violation of the KAPA's criminal abuse statutes, and these claims may go forward.

### III

In summary, two of Vanhook's § 446.070 claims may go forward as they stand: his negligence per se claim for violation of KRS 209. 990(2)-(7), the KAPA provisions criminalizing adult abuse; and his negligence per se claim for violation of KRS § 508.090, the state's criminal abuse statute. However, the following claims shall be dismissed: negligence per se for violation of federal Medicare/Medicaid statutes and regulations, negligence per se for violation of KRS Chapters 216 and 216B, except for Vanhook's claims arising under the resident's rights statute; negligence per se for violation of KRS § 506.080, the criminal facilitation statute; and negligence per se claim for violation of miscellaneous provisions of the KAPA, including KRS § 209.400-.420 (adult retail goods discount program), KRS § 209.500 (senior games program), KRS § 209.550-554 (immunizations), KRS § 209.032-.200 (administrative provisions regarding investigation of report of abuse).

The Court notes that Vanhook has not sought leave to amend his Complaint. For the aforementioned reasons, the Court dismisses without prejudice Vanhook's § 446.070 claims for violation of KRS § 209.030(2), the adult abuse reporting statute, and KRS § 530.100, the

criminal adult endangerment statute. The Court will entertain a motion seeking to amend these claims if Vanhook finds it desirable to do so. Finally, the Court notes that Vanhook's claims in ordinary negligence, as well as any claims arising under the Kentucky Resident's Rights statute, KRS 216.515, remain intact.

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

1. Defendant's Partial Motion to Dismiss [**R. 3**] is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiff's negligence per se claim based on federal statutes and regulations is **DISMISSED with prejudice.**

3. Plaintiff's negligence per se claim for violation of KRS § 530.100, the criminal adult endangerment statute, is **DISMISSED without prejudice.**

4. Plaintiff's negligence per se claim for violation of KRS § 506.080, the criminal facilitation statute, is **DISMISSED with prejudice**.

5. Plaintiff's negligence per se claims based on violations of KRS Chapter 216 and Chapter 216B, save for his claim based on the rights expressly enumerated in KRS § 216.515, are **DISMISSED with prejudice**.

6. Plaintiff's negligence per se claim based on violations of KRS Chapter 209, save for his claim based on the Kentucky Adult Protection Act's criminal provisions (KRS § 209. 990(2)-(7)) and his claim based on KRS § 209.030(2), is **DISMISSED with prejudice.**

7. Plaintiff's negligence per se claim based on violations of KRS § 209.030(2), the adult abuse reporting requirement, is **DISMISSED without prejudice.**

This the 15th day of December, 2014.



**Signed By:**

*__Gregory F. Van Tatenhove__*

**United States District Judge**